UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GWEN M.,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No.:  23-cv-1562-KSC<br><br>**ORDER REVIEWING FINAL DECISION OF THE COMMISSIONER OF SOCIAL SECURITY** |

　　　　Plaintiff filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for benefits. Doc. No. 1. Having reviewed the briefing and the Administrative Record ("AR"), the Court issues the following decision.

## I. BACKGROUND

　　　　Plaintiff applied for Disability Insurance Benefits on October 21, 2020. AR 264-65.[1] The Social Security Administration denied the claim on April 29, 2021. AR 145. On May 31, 2021, the Administration denied plaintiff's claim upon rehearing. AR 146-58. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 190-91. Plaintiff,

---

[1]　　　The Court adopts the parties' citations to the certified record in this matter. All other citations reflect pagination assigned by the Court's CM/ECF case management system.

1

represented by counsel, appeared before the ALJ for a hearing on October 21, 2021. *See* AR 48-99. Plaintiff's attorney and the ALJ both examined plaintiff at the hearing, and the ALJ received testimony from a vocational expert and from plaintiff's husband as a lay witness. *See id*. After reviewing the documentary evidence in the record and hearing the witnesses' testimony, the ALJ ultimately concluded plaintiff was not disabled. AR 42.

The ALJ's decision followed the five steps prescribed by applicable regulations under which the ALJ must sequentially determine (1) if the claimant is engaged in substantial gainful employment; (2) whether the claimant suffers from a "severe" impairment; (3) if any impairment meets or is medically equal to one of the impairments identified in the regulatory Listing of Impairments; (4) the claimant's residual functional capacity ("RFC") and whether the claimant could perform any past relevant work; and (5) whether a claimant can make an adjustment to other work based on his or her RFC. *See* 20 C.F.R. § 404.1250(a)(4); AR 33-34. The ALJ's evaluation ends if at any individual step the ALJ finds the claimant is or is not disabled. *See* 20 C.F.R. § 404.1250(a)(4).

The ALJ made a preliminary finding that plaintiff's date last insured ("DLI") was June 30, 2019. AR 35. At step one of the five-step sequential evaluation, the ALJ found plaintiff had not engaged in substantial gainful activity through the DLI. *Id.* At step two, the ALJ found plaintiff had the following severe impairments: alcohol induced dementia, obsessive compulsive disorder, and alcohol dependence in remission. *Id.* The ALJ also found plaintiff had the following non-severe impairments: eczema, sun damage, allergic rhinitis, a history of upper respiratory infection and skin lesions, and a past colonoscopy. *Id.* At step three, the ALJ found none of the plaintiff's impairments, alone or in combination, met or exceeded the severity of the applicable regulatory listings. AR 35-37.

At step four, the ALJ determined plaintiff had the residual function capacity to "perform a range of work at all exertional levels" but with non-exertional limitations that plaintiff could "understand, remember, and carry out simple instructions for unskilled work tasks"; "perform no fast-paced or production-based work"; and "tolerate few workplace changes." AR 37. The ALJ concluded step four by finding plaintiff was unable to perform

any past relevant work. AR 40. At step five, the ALJ found there were jobs in the national economy that plaintiff could perform, including night cleaner, sweeper cleaner, and laundry laborer. AR 41. The ALJ accordingly concluded plaintiff was not disabled. AR 42. The Commissioner's decision became final when the Appeals Council denied plaintiff's claim for review. AR 18-23. This appeal followed.

## II. STANDARD OF REVIEW

This Court will affirm the ALJ's decision if (1) the ALJ applied the correct legal standards; and (2) the decision is supported by substantial evidence. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record; and if there is evidence in the record to support more than one rational interpretation, the Court will defer to the Commissioner. *Id.*

Even if the ALJ makes an error, this Court can nonetheless affirm the denial of benefits if such error was "harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'" *Ford v Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)). The Court's ability to uphold the ALJ's decision is limited in that this Court may not make independent findings and therefore cannot uphold the decision on a ground not asserted by the ALJ. *See Stout v. Comm'r of the Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## III. ANALYSIS OF THE COMMISSIONER'S DECISION

Plaintiff raises three arguments on appeal: the ALJ erroneously discounted the opinion of Dr. Clifford Taylor; the ALJ erroneously concluded plaintiff's impairments did not meet the listings at step three; and the ALJ's RFC assessment was unsupported by substantial evidence. *See generally* Doc. No. 13 at 4-5. The Court will address each issue in turn.

### (A) Whether the ALJ Properly Rejected Dr. Taylor's Opinion

Plaintiff argues the ALJ wrongly rejected Dr. Taylor's opinion on the basis that it was formulated after plaintiff's DLI. Doc. No. 13 at 5. Evidence of disability post-dating

the DLI can sometimes be relevant to proving the extent of disability arising prior to the DLI. *See generally*, *Carillo v. Comm'r of Soc. Sec.*, 1:22-cv-428-SAB, 2023 WL 5155866, 2023 U.S. Dist. LEXIS 140072, at *21-23 (E.D. Cal. Aug. 10, 2023) (collecting cases). If, however, the post-DLI medical opinion is not **retrospective**, i.e., if it does not pertain to the status of the plaintiff's disability prior to the DLI, then it is not persuasive because it does not bear upon the claimant's disability during the period material to the disability determination. *See id.* In this case, Dr. Clifford performed a psychological evaluation of plaintiff in February 2021. *See generally* AR 541-49. However, the opinion is not retrospective because Dr. Clifford opines on the status of plaintiff's mental impairments only as of February 2021. *Id.* The ALJ rejected the opinion on this basis, concluding it was inconsistent with the evidence of plaintiff's mental impairments prior to the DLI. AR 39-40.

Plaintiff argues the ALJ failed to consider the progressive nature of her dementia. Doc. No. 13 at 7-8. But a progressive disease by its very nature gets worse over time. Thus, the progressive nature of plaintiff's impairment does not permit the inference that her condition was somehow worse before her DLI. A medical source like Dr. Clifford might have examined plaintiff's medical history and offered a retrospective opinion. But that is not what Dr. Clifford provided. His opinion is limited to an assessment of plaintiff's mental impairments as of February 2021, and the ALJ's decision to reject the opinion on that basis was thus neither legally erroneous nor unsupported by substantial evidence.

### (B) Whether the ALJ's Step Three Analysis Was Erroneous

Plaintiff argues the ALJ failed to analyze whether her mental impairments met the regulatory listings at step three. Doc. No. 13 at 8. More specifically, plaintiff argues the ALJ should have found plaintiff met the "C criteria of Listing 12.02." *Id.* The regulatory listings are a potent tool for adjudicating disability applications because a benefits claimant who meets the listings is presumed disabled. *See Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Plaintiff erroneously argues she could have established her disability by meeting "the C criteria alone" of Listing 12.02. *See* Doc. No. 13 at 9. But Listing 12.02 actually

requires plaintiff "satisfy the requirements of both paragraphs A and B, *or* the requirements of *both* paragraphs A and C." *See* 20 C.F.R. part 404, subpart P, app. 1, part 12.A.2 (emphasis added).

As a threshold issue, the ALJ's decision is silent on the issue of the A criteria. *See* AR 35-37. The Court cannot tell whether the ALJ found plaintiff had met the A criteria, yet failed to indicate his finding, or whether the ALJ never reached consideration of the A criteria because the ALJ found plaintiff did not satisfy the B or C criteria and concluded the analysis there. Neither party addresses the A criteria in the briefing, and the Court concludes the issue has been waived. *See Bray v. Comm'r*, 554 F.3d 1219, 1226 n.7 (2009).[2]

The Court can, however, review the ALJ's evaluation of the C criteria. On the one hand, ALJ's are not required to draft dissertations on every aspect of a claimant's disability. *See Lambert v. Saul*, 980 F.3d 1266. 1277 (9th Cir. 2020). At the same time, an ALJ must cite evidence and provide explanations to support an adverse disability determination, not merely offer unsupported conclusions. *Cf. Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015); *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988); *Wentz v. Saul*, 473 F. Supp. 3d 1106, 1115 (E.D. Cal. 2020). The entirety of the ALJ's analysis here is that plaintiff did not meet the C criteria because "the record does not establish" plaintiff "had marginal adjustment." *See* AR 37. Although there is no bright line rule for how much detail an ALJ must provide, whatever the standard is, this conclusory remark falls far short. The Court must be able to review an ALJ's determination for substantial evidence, but if the ALJ fails to cite *any* evidence, the Court cannot perform any review.

Both parties persuasively argue their version of the facts based on the evidence in the record. *Compare* Doc. No. 13 at 10-12 *with* Doc. No. 15 at 8-9. But the responsibility for making disability determinations lies ultimately with the Commissioner, and the

---

[2] The Court will address the significance of this waiver as part of the harmless error analysis, *infra*.

5

23cv1562

Court's ability to review those decisions is constrained to reviewing only the grounds asserted by the ALJ. *See Stout*, 454 F.3d at 1054; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss."). Because the ALJ failed to supply any explanation for his determination vis-à-vis the C criteria, and deciding between the competing interpretations of the evidence here would exceed the scope of this Court's power to review the ALJ's decision, the Court must conclude the ALJ's decision on the paragraph C criteria was not supported by substantial evidence.

### (C) Whether the Error at Step Three Was Harmless

Having found error in the ALJ's decision, the Court must decide whether the error was prejudicial or harmless. As a threshold issue, plaintiff bears the burden of showing the ALJ's error was harmful in this case. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009). At the step three analysis, plaintiff must make an affirmative showing that she meets **all** the requirements of a listed impairment. *See Burch v. Banhart*, 400 F.3d 676, 682-83 (9th Cir. 2005). When an issue is not raised, the Court will not spot the issue and develop the arguments on behalf of the parties. *See Christian Legal Soc'y Chapter of Univ of Cal. v. Wu*, 626 F.3d 483, 488 (9th Cir. 2010). Here, as the Court has already noted, plaintiff erroneously assumed she would satisfy Listing 12.02 if she met only the C criteria. *See* Doc. No. 13 at 9. Plaintiff has not tendered to the Court the issue of whether she satisfied the required A criteria; an issue the Court has deemed waived. Thus, even if the ALJ were to reach a different result in considering the C criteria, it would be "inconsequential" to the ultimate determination because an essential element of her eligibility under the Listings is missing, and the error is harmless. *Ford*, 950 F.3d at 1154.

Notwithstanding the waiver issue—which is itself an independent and sufficient ground to find harmless error—an erroneous step-three determination is harmless on the merits when the ALJ's findings at other steps show the claimant cannot meet the listings. *See Lewis v. Apfel*, 236 F.3d 503, 512-14 (9th Cir. 2001). In *Lewis*, the ALJ failed to explain his conclusion that a claimant's epilepsy did not meet the relevant Listing. *See* 236 F.3d at

512. However, the remainder of the ALJ's decision unambiguously concluded the plaintiff's epilepsy was only disabling because he failed to comply with his anti-seizure medications. *See id.* at 513. The Court held the ALJ's failure to properly evaluate the plaintiff's epilepsy at step three was harmless error. *See id.* 513-14. Because compliance with medication is a necessary condition of finding a claimant's epilepsy satisfies the Listing, the plaintiff could not have met the applicable Listing no matter what the severity of his symptoms. *Id.*

The same logic applies to this case. Both parties agree that plaintiff would need to show "marginal adjustment" to meet the C2 criteria of the applicable listing. *See* Doc. No. 13 at 9-10; Doc. No. 15 at 7-8. Under Listing 12.02(G)(2)(c), a plaintiff can demonstrate marginal adjustment "when the evidence shows that changes or increased demands have led to exacerbation of [plaintiff's] symptoms and signs and to deterioration in [plaintiff's] functioning." But "marginal adjustment" is not the only requirement. A plaintiff must also introduce proof of satisfying the C1 criteria, which require the plaintiff to show "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting" help alleviate the symptoms of a mental disorder. *See* Listing 12.02(G)(2)(b). To put it in plain English, the C criteria are satisfied where treatment and support help the plaintiff's symptoms improve, but changes in daily routines make the symptoms worse. As the Court will explain, that is not plaintiff's actual argument in this case.

Based on the evidence cited in her briefing, plaintiff argues she lived in a structured environment, receiving help from her husband to do things like get to work, etc. Doc. No. 13 at 10-11. The Court assumes without deciding this would qualify as a structured setting or a psychosocial support. However, the testimony on which she relies to show marginal improvement indicates she was too impaired to work notwithstanding the various forms of care she was receiving. *See generally* Doc. No. 13 at 10-11. For example, the testimony shows her husband needed to help her take various "tests" just to get a job at Ralph's. *See id.* at 10. She also cites to testimony that her mental impairments made it "hard to get out the door on time." *Id.* These pieces of evidence both show she was too impaired to have

the job in the first place, not that having the job caused her impairments to worsen. Along the same vein, her husband had to drive her to work because her mental impairments precluded driving. *Id.* Because this is the case irrespective of whether she went to work or not, this evidence also shows she was too impaired to work, not that working negatively affected her impairments that would otherwise have been under control. To meet the C criteria, she would need to show she had her impairments under control but working made them worse. The evidence simply does not and can not support such a finding.

The evidence, and plaintiff's conclusions based on that evidence, actually point to the ***B criteria*** of Listing 12.02, which the ALJ considered at length, and which analyze whether a claimant's mental functioning is limited to such a degree that it effectively precludes performing any work. *See* AR 35-36. The B and C criteria are thus very different: The B criteria supply the standard for an ALJ to conclude the claimant receives treatment but nonetheless remains too impaired to work, while the C criteria supply the standard under which an ALJ can conclude the claimant receives effective treatment, such that he or she might be able to work, but nonetheless remains disabled because trying to adapt to working would cause a condition to worsen. Plaintiff could never have prevailed under the C criteria standard, despite the ALJ's failure to adequately consider it, because her evidence is only relevant to a finding of disability under the B criteria. Thus, as was the case in *Lewis*, the record here shows that a crucial element of the relevant listing is absent from the record, and the ALJ's error was, therefore, harmless.

**(D) Whether the ALJ's RFC Assessment Was Supported by Substantial Evidence**

For her third and final claim of error, plaintiff asserts the ALJ's RFC assessment was not supported by substantial evidence for two separate reasons. Doc. No. 13 at 12. She first claims the ALJ made an impermissible "independent finding" at step four. *Id.* She also argues the ALJ failed to consider her "ability to sustain work" in making the RFC assessment at issue. *Id.* at 12-13.

////

### **(1)  Whether the ALJ Made an Improper "Independent Finding"**

Plaintiff argues the ALJ erred by "making an independent finding" because "there is no medical opinion that supports" the ALJ's RFC determination. *See* Doc. No. 13 at 12. Plaintiff's cites no controlling legal authority, and there is virtually no discussion of the facts, so the Court must construe what, exactly, plaintiff is arguing here. To the extent plaintiff contends the ALJ was *required* to have a medical opinion directly supporting every aspect of the RFC assessment, "[s]uch a rule would tend to contravene established circuit precedent that the RFC need not mirror any particular opinion, and would directly contravene the regulations that provide that the agency may obtain a consultative examination to resolve evidentiary ambiguity or insufficiency, not that an ALJ must do so in every case." *See Hogan v. Kijakazi*, 1:20-cv-1787-SKO, 2022 WL 317031, 2022 U.S. Dist. LEXIS 19355, at *28 (E.D. Cal. Feb. 1, 2022) (citations omitted). The Court rejects any such argument from plaintiff.

The Court also rejects any contention the ALJ overstepped the bounds of his authority by offering a medical opinion. Although ALJs may not formulate bonafide medical opinions, they are expected to incorporate medical evidence in the record into a cogent RFC analysis. *See Rounds v. Comm'r*, 807 F.3d 996, 1006 (9th Cir. 2015); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *Bufkin v. Saul*, 836 Fed. Appx. 578, 579 (9th Cir. 2021). The record here reveals the ALJ recited relevant portions of plaintiff's medical history, reviewed the opinions of on-point medical sources, took plaintiff's testimony, and translated the evidence probative of plaintiff's impairments into an opinion about plaintiff's ability to work notwithstanding those impairments. *See generally* AR 37-40. The ALJ did not interpret raw medical data and offer an opinion that could only be provided by a medical professional. The Court, accordingly, concludes there was no error on this basis.

////

////

### **(2)   Whether the ALJ Erred by Failing to Consider Plaintiff's "Ability to Sustain Work" Under the Compassionate Allowances Program**

The Court understands the thrust of plaintiff's argument here to be as follows: plaintiff should have been found disabled under the Administration's "Compassionate Allowance initiative" because plaintiff has Alzheimer's disease, which is irreversible and progressive, and she cannot therefore "sustain" the ability to work given the inevitable worsening of her disease. *See generally* Doc. No. 13 at 13-15. A "[c]ompassionate allowance" is a "determination or decision" made by the Commissioner "under a process that identifies for expedited handling claims that involve impairments that invariably qualify under the" Listings "based on minimal, but sufficient, objective medical evidence." 20 C.F.R. § 404.1602.

At this point, there appears to be "little authority concerning the compassionate allowance program." *Doto v. Berryhill*, 17-cv-1120-VKD, 2018 WL 4680212, 2018 U.S. Dist. LEXIS 168347, at *44 (N.D. Cal. Sept. 28, 2018). Nonetheless, the judicial approach to the compassionate allowance program has thus far been that it merely streamlines and expedites the process of evaluating a disability claim, but it does not alter the standard for when an applicant is considered disabled. *Id.* at *44-45; *see also Steven H. v. Comm'r*, 1:22-cv-580, 2023 WL 4072124, 2023 U.S. Dist. LEXIS 106910, at *6-8 (D. Ohio June 20, 2023) (collecting cases).

An intriguing question is "must the ALJ find an applicant is disabled if the applicant suffers from an impairment that meets the criteria for a compassionate allowance?" Plaintiff does not directly assert this argument, but her position necessarily relies on it because the only way the compassionate allowance program would matter to this case is if it would have changed the outcome of her disability determination. The dominant judicial approach has been to answer that question in the negative, holding the Commissioner may proceed under ***either*** the compassionate allowance framework or the standard five step analysis, and courts are not free to second-guess an administrative decision because the Commissioner elected one method over the other. *See Steven H.*, 2023 U.S. Dist. LEXIS

106910, at *6-8. At the same time, the Court is not aware of any ***binding*** authority so holding. Moreover, the Court can see the logic of arguments to the contrary: after all, what use is a compassionate allowance program if the Administration can freely ignore it without the possibility of review? And if the Administration has determined an impairment "invariably" qualifies under the Listings, why should the Administration not be bound by that determination? In an appropriate case, these issues might merit serious consideration because they could be outcome determinative. But this Court does not need to resolve these issues because it remains the case that, even if plaintiff were entitled to have the ALJ consider her impairments under the compassionate allowance framework, she would nonetheless need to be disabled under that framework, which means her qualifying disability would need to arise *prior to* her DLI of June 30, 2019.

The earliest evidence in the record that supports plaintiff's contention she suffers from the compassionate allowance-qualifying condition of early onset Alzheimer's is the disability report she produced on October 22, 2020. AR 307-15. That is more than a year after her DLI. Plaintiff has not cited to any evidence in the record indicating she was diagnosed with Alzheimer's disease prior to her DLI. The Court's independent review of the record has not revealed any indication of an Alzheimer's diagnosis prior to the DLI. The earliest date on which the Court can find an objective medical opinion indicating Alzheimer's disease might be a "likely" source of plaintiff's worsening dementia (which nonetheless falls short of a conclusive diagnosis), is a report from Dr. Gustavo Alberto Delgado dated November 11, 2020. *See* AR 579. Records generated prior to plaintiff's DLI instead treat her dementia as alcohol-induced based on plaintiff's history of alcohol use. *See, e.g.*, AR 406-07, 699-704. The record in this case hardly supports a conclusive finding that plaintiff suffers from Alzheimer's disease even today; and it certainly cannot sustain a finding that she had Alzheimer's disease prior to her DLI, which would be a necessary condition of finding her eligible under the compassionate allowance framework. Given that, the ALJ's failure to evaluate her claim as a possible compassionate allowance was not error.

## IV. CONCLUSION

This is an unfortunate case because, as the ALJ noted, it appears reasonably clear from the record that plaintiff's condition worsened after the expiration of her date last insured. *See, e.g.*, AR 36, 38. It may well have been the case that, by the time of the hearing, plaintiff's impairments would have supported a finding of disability. However, she needed to be disabled prior to her DLI, and the ALJ's conclusion that plaintiff did not become disabled prior to that date was correct. This reflects the key distinction between Social Security Disability Insurance (which is an earned benefit) with Supplemental Security Income (which is not). Plaintiff's condition may prove a better fit for the latter, a determination on which will not involve the rigid application of a DLI, and which is also eligible for a compassionate allowance determination.  The decision of the Commissioner in this matter is **AFFIRMED**.

Dated: August 21, 2024

Hon. Karen S. Crawford
United States Magistrate Judge